UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| M.A., a minor, by and through her Natural Mother and Next Friend, P.K., ) ) ) Plaintiff, ) ) v. ) ) VILLAGE VOICE MEDIA HOLDINGS, LLC, ) d/b/a backpage.com, et al., ) ) Defendants. ) | Case No. 4:10-CV-1740 TCM |

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS**

Plaintiff's Response makes clear the extreme and unsupported nature of Plaintiff's attempt to evade Section 230:

- Plaintiff requests that the Court rule contrary to *all* existing Section 230 case law (since all decisions to date have found Section 230 to broadly cover all claims against intermediaries that are based upon their carrying of customer-created harmful content).

- Plaintiff's theory requires the Court to disregard Section 230's statutory definitions (of "interactive service provider") and operative provisions (the fact that it applies to both providers and users of "interactive service providers").

- Plaintiff asks that the Court disregard key allegations its own Amended Complaint (those that allege Latasha McFarland created and posted the harmful content), and assume instead that that Defendant is the actual "information content provider."

- Plaintiff truncates statutory quotations in an attempt to hide the fact the exemption it relies on is limited to criminal prosecutions.

- Plaintiff brandishes its jury argument call-to-arms—that Defendant is in business *for profit*—even though that cannot negate Section 230 immunity.[1]

- Finally, Plaintiff suggests a new reading of treaties, contrary to the U.S. Supreme Court's

---

[1] *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998); *Doe v. Bates*, No. 5:05-CV-91, 2006 WL 3813758, at *21 (E.D. Tex. Dec. 27, 2006) (rejecting the argument that "Yahoo! should be liable because it knowingly profited from the trafficking of illegal child pornography").

most recent pronouncement, whereby a non-self-executing treaty, expressly directed only to the government and not to creation of citizen rights, which Congress viewed as compatible with all domestic law (including Section 230) at the time of enactment, somehow grants plaintiff a private cause of action that is magically exempt from Section 230.

None of Plaintiff's extreme arguments is viable. The Section 230 immunity that Congress created—expressly to permit internet intermediaries like Defendant to operate without the threat of liability for their customers' misconduct—fully applies here.  Defendant Backpage.com, LLC ("Backpage") simply published advertisements that Plaintiff's Amended Complaint admits were created and placed by a third party, Latasha Jewell McFarland ("McFarland").

Indeed, a recent Eighth Circuit decision, which we were not aware of at the time of our original brief, further supports Section 230's broad application.  In *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010), the Court affirmed the district court's dismissal under Section 230 of claims against an interactive computer service provider.

Because it is undisputed that McFarland created and placed the advertisements in question, Plaintiff's civil claims against Backpage must be dismissed.

I. **BACKPAGE IS A PROVIDER OR USER OF AN INTERACTIVE COMPUTER SERVICE, AND HENCE ENTITLED TO SECTION 230 IMMUNITY.**

Plaintiff's argument in Section IV(A) of its Response that Defendant is not an "interactive computer service provider" is both wrong and irrelevant.  First, Backpage is clearly an "interactive computer service provider" under the statutory definition.  Moreover, the statute provides immunity not only to providers, but also to *users* of interactive computer services.

Plaintiff's statement that "there are cases to the contrary" is a gross understatement. Every court that has decided the issue has concluded that websites are entitled to statutory immunity under 47 U.S.C. § 230 as providers of interactive computer services.  *See Johnson v. Arden*, 614 F.3d 785, 791-92 (8th Cir. 2010) (finding that Section 230 immunity applied to a

webhost), *citing to Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (finding Section 230 immunity for a website); *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (same); *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (same); *Zeran v. Am. Online*, 129 F.3d 327, 332-34 (4th Cir. 1997) (same). *See also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008). In fact, craigslist.com, a similar online classified ad service, has been found to be an "interactive computer service." *See Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008). Indeed, because this is so clear, prudent plaintiffs often do not even attempt to argue otherwise. *See*, *e.g.*, *Almedia*, 456 F.3d at 1321 n.2; *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009).[2]

Plaintiff's argument also misses the point that Section 230 provides immunity not only for *providers* of interactive computer services but also *users* of such services. 47 U.S.C. § 230(c)(1). Thus, even though Backpage is a provider of an "interactive computer service," it is unnecessary for the Court to decide this matter. *See Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003) (finding it unnecessary to decide whether a listserv and website were providers because they were clearly users).[3]

---

[2] Plaintiff may be confused because of the terminology of "internet service provider" or ISP used by many courts. *See*, *e.g.*, *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010). The term ISP as used in technical parlance does often refer to companies that provide access to the Internet. Section 230, however, provides immunity for providers or users of "interactive computer services." While an ISP qualifies as a provider of an interactive computer service, the definition is much broader, encompassing other digital services, such as websites. *See Batzel*, 333 F.3d at 1029 n.12, 1030 n.15. The Court should reject Plaintiff's suggestion that it adopt the definition of a different term, "service provider," from the DMCA, a different statute, to interpret Section 230's use of "interactive computer services" (a term that Section 230 specifically defines).

[3] Plaintiff also confusingly states: "all present on the internet, would be granted that immunity, subject to losing by its additional conduct making it an information provider." (ECF No. 33, p. 11). This is exactly what Congress provided for in Section 230—to promote free

## II. DEFENDANT IS NOT THE INFORMATION CONTENT PROVIDER AND CANNOT BE HELD LIABLE FOR MCFARLAND'S CONTENT.

Under Section 230, only "information content providers" can be liable for content posted on the Internet. Backpage is not the information content provider here—McFarland is, as Plaintiff's Amended Complaint makes clear:

> 10. …Plaintiff M.A., a minor…was being sexually trafficked by Latasha Jewell McFarland, an adult…. [S]he [McFarland] photographed minor M. A. …; she posted this child pornography on defendants' website, backpage.com, in advertisements seeking payment for sex; she paid backpage.com for these sex ad postings; she reposted ads….
>
> * * *
>
> 13. By posting explicit nude photographs of Plaintiff, M.A., a minor, in an advertisement which advertised her services as an escort for sex on backpage.com, Defendants facilitated child sex trafficking and aided and abetted McFarland. . . .

Amended Complaint, ECF No. 23, ¶ 13; *see also id.* at ¶¶ 10-12. That is, *McFarland* took the photos, *McFarland* "posted" them, *McFarland* paid backpage.com for the ads, and *McFarland* "reposted" the ads. Backpage did not take the photos, did not initiate the posting, did not pay for the posting, and did not initiate the reposting—***McFarland*** did all those things. Under Section 230, "information content provider" is the one who "responsible, in whole or in part, for the creation or development of [the] information," and that is clearly *McFarland*, not Backpage. Thus, Backpage is not liable as the "information content provider."[4]

---

speech on the Internet, providers and users are not liable for the content of others. If Plaintiff disagrees with this policy, its recourse is with Congress, not the courts.

[4] Plaintiff correctly notes that in some cases—though situations quite different from the present one—courts have held that a provider of interactive computer service can also be found to be the information content provider, and thus not immune. That occurs, however, only where the service provider *requires* the posting of the content in issue. *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157 (9th Cir. 2008) (roommate meeting service provider liable to extent that it required that its users utilize certain legally prohibited terms in roommate ads; provider held not liable for portions of service where customers posted content of their own creation). That is decidedly not the situation here. Rather, Backpage's service is analogous to the "Additional Comments" section of *Roommates.com* for which the 9th Circuit found that Section 230 immunity applied.

### III.  PLAINTIFF MAY NOT EVADE SECTION 230 IMMUNITY BY ALLEGING "AIDING AND ABETTING" LIABILITY.

Every Internet intermediary aids its customer by posting the customer's content and hence making it available to the world of Internet users. Congress understood this when it created Section 230, and Congress in Section 230 expressly overrode prior law (such as *Stratton Oakmont v. Prodigy*, 1995 WL 323710 (N.Y. Sup. Ct. 1995)), which made intermediaries liable for their customers' content.[5]  Thus, one cannot evade Section 230's protection for intermediaries by saying, "But the intermediary's actions facilitated (or, in Plaintiff's words, 'aided and abetted') the actions of the bad guy content provider!"  Of course they did.  That is how the Internet works.  And it is precisely that facilitating function that Congress expressly immunized in Section 230, because of the importance of unfettered Internet intermediaries to both free-flowing communications and economic growth.

---

Backpage is even more similar to craigslist.com, which the Seventh Circuit found entitled to Section 230 immunity. *See Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008); *see also Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967 (N.D. Ill. 2009).  Both of these cases were cited with approval by the Eighth Circuit in *Johnson v. Arden*.  614 F.3d at 791.  *See also Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, No. 2:04-cv-47, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008); *Gentry v. eBay, Inc.,* 99 Cal. App. 4th 816, 832 (2002).

Further, the *Anthony v. Yahoo!* case cited by Plaintiff is entirely distinguishable.  There, the plaintiff actually alleged that the defendant created the profiles that were at issue.  421 F. Supp. 2d 1257, 1262 (N.D. Cal. 2006).  In comparison, there are no allegations that present Defendant actually created the advertisements at issue.

[5] *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 146 P.3d 510, 51 Cal. Rptr. 3d 55 (2006) ("The legislative history indicates that section 230 was enacted in response to an unreported New York trial court case. (*Stratton Oakmont, Inc. v. Prodigy Services Co*. (Sup.Ct. May 24, 1995) 23 Media L. Rep. 1794 [1995 WL 323710] (*Stratton Oakmont*).)  There, a service provider was held liable for defamatory comments posted on one of its bulletin boards, based on a finding that the provider had adopted the role of "publisher" by actively screening and editing postings.  "Fearing that the specter of liability would … deter service providers from blocking and screening offensive material, Congress enacted § 230's broad immunity," which "forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." (*Zeran*, supra, 129 F.3d at p. 331.)") (footnotes omitted).

Thus, contrary to Plaintiff's desires, there is no "aiding and abetting" loophole in Section 230. Such theories have been repeatedly rejected. For example, the Northern District of Illinois dismissed a similar suit in which the Sheriff of Cook County alleged that Craigslist violated criminal laws prohibiting prostitution and related offenses:

> He alleges for example that Craigslist knowingly "arranges" meetings for the purpose of prostitution and "directs" people to places of prostitution. . . . But these allegations strain the ordinary meaning of the terms "arrange" and "direct" unless Craigslist itself created the offending ads. There is no such allegation, and given § 230(c)(1), we cannot treat Craigslist as if it did create those ads. . . . Intermediaries are not culpable for "aiding and abetting" their customers who misuse their services to commit unlawful acts.

*Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967 (N.D.Ill. 2009) (internal citations omitted).

Similarly, in *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), the plaintiff alleged that an interactive computer service provider aided and abetted violations of the Electronic Communications Privacy Act of 1986. Judge Easterbrook of the Seventh Circuit overwhelmingly rejected such a theory:

> A web host, like a delivery service or phone company, is an intermediary and normally is indifferent to the content of what it transmits. Even entities that know the information's content do not become liable for the sponsor's deeds  Does a newspaper that carries an advertisement for "escort services" or "massage parlors" aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity? How about Verizon, which furnishes pagers and cell phones to drug dealers and thus facilitates their business? … That web hosting services likewise may be used to carry out illegal activities does not justify condemning their provision whenever a given customer turns out to be crooked.

*Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003).

## IV.   SECTION 230 IMMUNITY APPLIES TO PLAINTIFF'S PURELY CIVIL CLAIMS.

Plaintiff's argument that Section 230 immunity does not apply to civil actions brought under Chapter 110 of Title 18 or other federal criminal statutes is directly at odds with prevailing case law. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Tex. Dec. 27,

2006); *see also Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, fn.6 (N.D. Ill. 2009); *Goddard v. Google, Inc.*, No. C 08-2738, 2008 WL 5245490 at *5, n.5 (N.D. Cal. Dec. 17, 2008).

Tellingly, Plaintiff selectively quoted the applicable section of the statute. Section 230(e)(1) reads:

(e) Effect on other laws

(1) No effect on criminal law

Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal statute.

Plaintiff conveniently ignored the title of § 230(e)(1), "**No effect on criminal laws**." And it truncated the text of the statute, which provides that Section 230 shall not impair "the enforcement of . . . chapter . . . 110 (relating to sexual exploitation of children) of title 18, or ***any other Federal criminal statute***."

As discussed in *Doe v. Bates*, the exception in Section 230(e)(1) does not encompass private civil claims. 2006 WL 3813758, at *21 (E.D. Tex. 2006).[6] Because Plaintiff has brought a civil claim, the exception for criminal enforcement of federal criminal laws is inapplicable.

This interpretation of the statute is further buttressed by the policies directly incorporated into Section 230. *See* 17 U.S.C. § 230(a) and (b). Further, Plaintiff's interpretation would render 17 U.S.C. § 230(e)(4), a special exception concerning the Electronic Communications Privacy Act ("ECPA"), entirely superfluous. Since ECPA is found in the Criminal Code and contains

---

[6] As explained in *Doe*, Congress "preserved the ability of law enforcement officials to enforce the federal criminal laws to their fullest extent while at the same time eliminating the ability of private plaintiffs to pursue service-provider defendants. Given the complexity of Title 18 and the availability of civil remedies in statutes throughout the criminal code, Congress achieved its intended result using simple language making it clear that Section 230's limits on civil liability would not affect governmental enforcement of federal criminal laws." *Id.*

- 7 -

criminal provisions, under Plaintiff's interpretation, it would not be covered by Section 230. But Congress clearly thought otherwise, and provided a special exception. The only reasonable interpretation, in line with *Doe v. Bates*, is that Section 230(e)(1) only applies to criminal enforcements, which is why Congress provided the broader exception for both civil and criminal violations of the ECPA in Section 230(e)(4). It goes almost without saying that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (internal citations omitted).

Moreover, Plaintiff's interpretation of the statute, voiding the Section 230 immunity in all situations where civil actions are based upon criminal statutes would eviscerate the immunity found in Section 230. If Plaintiff's theory were correct, then many past Section 230 decisions would have been wrongly decided. For example, in *Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007), Lycos, the service provider, was found immune under Section 230 from liability over false information posted to its message boards involving the plaintiff's company and stock—even though the plaintiff there alleged a violation of federal securities laws, which contain criminal provisions. *Id.* at 415. Under Plaintiff's theory, Lycos could have been held liable as an "aider and abettor" of securities fraud, and Section 230 would not have applied. *See also Ben Ezra, Weinstein, and Co. v. America Online Inc.*, 206 F.3d 980 (10th Cir. 2000) (holding AOL immune for relaying inaccurate stock price information it received from other vendors).

If Plaintiff's theory were permitted, future plaintiffs will only be emboldened to plead that their civil claims actually "enforce" federal criminal statutes in creative ways never envisioned by Congress or past case law on Section 230—for example, such broad and pliable

criminal statutes as wire fraud, 18 U.S.C. § 1343 or the Computer Fraud & Abuse Act, 18 U.S.C. § 1030 *et seq*. The Court should reject Plaintiff's interpretation, and follow the statutory language and settled law including *Doe v. Bates*.

## V. THE OPTIONAL PROTOCOL HAS NO EFFECT ON THIS CASE OR SECTION 230.

Plaintiff has failed to refute or even directly address the multiple reasons why Defendant believes the Optional Protocol does not override Section 230. Rather, Plaintiff provides a rambling discussion of treaty law encompassing interesting but irrelevant cases from the Nineteenth Century. For Plaintiff to prevail on its Optional Protocol argument, it is required to show that the Protocol (a) is self-executing, (b) creates private rights, and (c) conflicts with and preempts Section 230 immunity. Plaintiff cannot establish even one of those, let alone all three.

### a. The Protocol is Not Self-Executing.

As discussed in Defendant's memorandum in support of its motion to dismiss, the Protocol is not self-executing. *See* ECF No. 28, pp. 17-19. A plain reading of the Protocol demonstrates that implementing legislation is required and that it is not enforceable on its own. *Id.* The U.S. Senate's Resolution ratifying the treaty even expressly stated that it was not self-executing, as did the State Department in its Initial Report under the Protocol. *Id.* Under Supreme Court case law, a non-self-executing treaty is not binding federal law. *Medellin v. Texas*, 552 U.S. 491 (2008) (stating that this principle goes back to 1829 and that "a 'non-self-executing' treaty does not by itself give rise to domestically enforceable federal law.").[7]

---

[7] Plaintiff makes a puzzling and inconsistent argument that the Protocol is self-executing because its requirements were already implemented at the time of ratification—though this definition of self-executing contravenes the *Medellin* case and the pronouncements of the executive and legislative branches. Then, inconsistently, Plaintiff argues that while the treaty accepts all pre-existing domestic law, the pre-existing Section 230 was somehow magically excluded from that acceptance, apparently for no other reason than Plaintiff wants it to. And while Plaintiff asks why it wasn't necessary to pass new laws to implement the treaty, it ignores

Because the Protocol is not self-executing, it does not govern here, and the Court should only look at the United States Code, including Section 230, and not the Protocol.

b. **The Protocol Does Not Create Private Rights.**

Because the Protocol is not self-executing, it is not "domestically enforceable federal law," and thus cannot give rise to private or "primary rights." While there may previously have been a debate on whether a non-self-executing treaty merely failed to provide a cause of action or also failed to provide judicially enforceable rights, *Medellin v. Texas* answered this question. 552 U.S. 491, 505 n.2, 506 n.3 (2008) ("[A] 'non-self-executing' treaty does not by itself give rise to domestically enforceable federal law."). Only a self-executing treaty can provide a private right that is judicially enforceable.[8]

Moreover, even assuming that Plaintiff is correct and a non-self-executing treaty can provide private rights, the Protocol still does not. "Even when treaties are self-executing in the sense that they create federal law, the background presumption is that '[i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts.'" *Id.* at 506, n.3 (internal citations omitted); *see also Katel LLC v. AT&T Corp.*, 607 F.3d 60, 67 (2d Cir. 2010). While the Protocol was surely intended to benefit children, it was meant to do so in the manner that ratifying nations would

---

the obvious answer—that Congress didn't pass implementing laws because existing laws, including Section 230, fully complied with the Protocol.

[8] Plaintiff also spends a great length of time establishing that a treaty may not provide "domestic remedial rights," but still provide for private rights that are enforceable through other federal statutes, such as the APA. *See* ECF No. 33, p. 22-25. While this may be true, it is also entirely irrelevant. For a treaty to provide private rights (or remedial rights), it must be self-executing. *Medellin*, 552 U.S. 491. So while the self-executing treaties as cited by Plaintiff may have provided private rights that are enforceable through federal laws, non-self-executing treaties, such as the Protocol, do not provide private rights, and thus there is nothing to enforce.

pass laws to comply with the agreement.  Nothing in the language of the Protocol provides individual rights.  *See* Defendant's Memorandum, ECF No. 28, pp. 17-18 (describing that each section of the protocol is worded in terms of what the agreeing State Party must do).

The Protocol is very different indeed than the treaties described in the historical cases cited by Plaintiff and the hypotheticals that it provides.  For example, Plaintiff states, "if genocide is prohibited by a treaty, then it can be said that citizens have a right to being free of genocide under domestic and international law."  Similarly, Article III of the 1949 Geneva Convention cited in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), affirmatively prohibits State Parties from engaging in certain acts (*e.g.*, mutilation, cruel treatment and torture, etc.).  The same is true of the other case cited by Plaintiff.  *See Geofroy v. Riggs*, 133 U.S. 258, 267 (1890) ("Frenchmen shall enjoy the right of possessing personal and real property . . .").  But nothing cited to by Plaintiff in the Optional Protocol provides any analogous right to an individual.  *See*, *e.g.*, Optional Protocol, Art. 3 ("Each State Party shall ensure . . ."); Art. 9 ("State Parties shall ensure . . .").  Instead, it is an agreement among nation states to pass legislation prohibiting certain acts.

    c.  **<u>The Protocol Does Not Conflict With or Preempt Section 230 Immunity.</u>**

If Plaintiff has any real grievance as to the Optional Protocol, it would be that the United States has not complied with its obligations under the Protocol.  But in fact the United States has properly complied with the treaty, because, as the Senate believed at the time of ratification, and as the Department of State has represented to the United Nations, existing law, which includes Section 230, complies with the treaty requirements.  Further, as discussed in Defendant's Memorandum, nothing in the Protocol conflicts with or preempts Section 230.  *See* ECF No. 28, pp. 19-20.  Thus, whether Plaintiff's Complaint should be dismissed is entirely a question of the

United States Code, including Section 230; the Optional Protocol is not relevant.

## CONCLUSION

For the foregoing reasons, Backpage respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety.

>Respectfully submitted,
>THOMPSON COBURN LLP
>
>
>By:  /s/ Michael L. Nepple
>    Mark Sableman #36276 MO
>    Michael L. Nepple #42082 MO
>    One US Bank Plaza
>    St. Louis, Missouri 63101
>    (314) 552-6000 (telephone)
>    (314) 552-7000 (facsimile)
>    *msableman@thompsoncoburn.com*
>    *mnepple@thompsoncoburn.com*
>
>Attorneys for Defendant Backpage.com, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served via operation of the Court's electronic filing system this 3rd day of February, 2011, upon all counsel of record.

>      /s/ Michael L. Nepple